UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYAM QURESHI, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPS 9, LLC and ANURAG SETT,<br><br>Defendants.<br><br>OPS 9, LLC and ANURAG SETT,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>FALONI & ASSOCIATES,<br><br>Third-Party Defendants. | Civil Action No. 14-1806 (MAH)<br><br><br><br><br><br><br><br><br>OPINION |

## I. INTRODUCTION

This matter comes before the Court by way of Defendants/Third-Party Plaintiffs OPS 9, LLC and Anurag Sett's (collectively, "OPS 9") Motion for Attorneys' Fees. The Court has considered this motion without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth below, the Motion is granted in part and denied in part.

## II. BACKGROUND

On February 6, 2014, Plaintiff Maryam Qureshi filed a class action complaint against OPS 9 for purported violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 to 1692p, in the Superior Court of New Jersey, Law Division, Middlesex County. *See* Notice of Removal Ex. A, Mar. 21, 2014, D.E. 1. Plaintiffs alleged that OPS 9 purchases

consumer debts and attempts to collect on the amounts owed by way of collection actions. *See id.*, Ex. A ¶¶ 15-21. Plaintiffs averred, among other things, that OPS 9 violated the FDCPA by failing to accurately identify the amount of the debt allegedly owed and by including complete and unredacted financial account numbers in court documents. *See id.*, Ex. A ¶¶ 88-96.

OPS 9 removed the action to this Court, and filed a Third-Party Complaint against Faloni & Associates ("Faloni") shortly thereafter. *See generally* Third-Party Compl., Apr. 10, 2014, D.E. 7. OPS 9 had retained Faloni to institute collection actions pursuant to a contract containing an indemnification clause that requires Faloni to defend and indemnify OPS 9 under certain circumstances. *See id.* ¶¶ 1, 13-14. The contract provided that Faloni agreed to:

> Indemnify, defend, and hold [OPS 9] harmless against liability, loss, or damage, including but not limited to attorney's fees and costs, which may result from any acts of commission or omission by [Faloni], its agents, servants, representative (sic), or employees or by reason of any matter or thing arising out the performance of services by [Faloni] under the Collection Agreement.

Decl. of Anurag Sett in Supp. of Third-Party Pl.'s Mot. for Attorneys' Fees ("Sett Decl.") ¶ 7, Oct. 26, 2019, D.E. 128-4.

In the Third-Party Complaint, OPS 9 brought claims for indemnification, contribution, breach of contract, breach of fiduciary duty, and negligence. *See* Third-Party Compl. ¶¶ 20-44. OPS 9 moved for summary judgment on its Third-Party Complaint, which the District Court granted in part and denied in part on October 28, 2016. *See* Order, D.E. 71. Specifically, the Court held that Faloni has duty to defend OPS 9 in connection with the underlying action. *Id.*

Litigation meanwhile proceeded on Plaintiff's FDCPA claims. The parties engaged in discovery; motion practice that included, among other things, a Rule 12(c) motion and a motion for class certification; mediation before a retired District Court judge; and settlement conferences

before the Undersigned. The parties ultimately reached a putative settlement wherein the class received $27,000 and class counsel received $70,000 for their fees and costs. *See* Order Granting Final Approval of Class Action Settlement ¶¶ 11-13, Mar. 18, 2020, D.E. 140. OPS 9 was represented by two law firms throughout this civil action. The Salvo Law Firm, P.C. ("Salvo Firm") served as OPS 9's "local counsel," and the Bedard Law Group, P.C. ("Bedard Firm") served as OPS 9's "national counsel." *See* Decl. of Cindy D. Salvo, Esq. in Supp. of Third-Party Pl.'s Mot. for Attorneys' Fees ("Salvo Decl.") ¶ 1, Oct. 26, 2019, D.E. 128-2; Decl. of John H. Bedard, Jr., Esq., in Supp. of Third-Party Pl.'s Mot. for Attorneys' Fees ("Bedard Decl.") ¶ 1, Oct. 26, 2019, D.E. 128-3; Sett Decl. ¶ 10.

By way of the instant motion, OPS 9 seeks $100,825.93 to cover its attorneys' fees and costs expended in this action.[1] *See* Mot. for Attorneys' Fees, Oct. 26, 2019, D.E. 128; OPS 9's Reply Br. at 8-9. OPS 9 has submitted declarations from Cindy D. Salvo, Esq., a partner at the Salvo Firm, and John H. Bedard, Jr., Esq., the sole shareholder of the Bedard Firm, in support of the present motion. Ms. Salvo and Mr. Bedard provided billing records itemizing the time their respective firms spent litigating this action. *See* Salvo Decl., Ex. B; Bedard Decl., Ex. A.

Faloni partially opposes OPS 9's motion. Faloni acknowledges that OPS 9 is "entitled to some award of fees/expenses in connection with this lawsuit," and "does not contest the hourly rates charged by the two outside law firms handling this matter on behalf of [OPS 9]." Faloni's Br. in Opp. to Mot. for Attorneys' Fees ("Faloni's Opp. Br.") at 1, Nov. 20, 2019, D.E. 131. However, Faloni does contest the overall amount requested and the reasonableness of certain

---

[1] The $100,825.93 figure is comprised of the fees arising from the underlying defense as well as the instant motion, less certain fees that OPS 9 has agreed to waive. *See* OPS 9's Reply Br. in Supp. of Mot. for Attorneys' Fees at 8-9, Dec. 9, 2019, D.E. 134.

billing entries. *See id.* at 1-2. Faloni asserts that "[u]nder no circumstances should counsel for [OPS 9] receive more than—or even the same as—the amount agreed to by plaintiff's counsel" as part of the underlying settlement. *Id.* According to Faloni, "there can be no better gauge of the amount of reasonable fees/expenses to be awarded to [OPS 9's] counsel in this case than the amount agreed to by plaintiff's counsel." *Id.* at 4. Faloni next identifies various categories of billing entries that it deems to be unreasonable: (1) alleged instances of double-billing for the same task by OPS 9's local and national counsel, (2) billing entries that correspond to interoffice communications between local and national counsel, (3) billing entries related to the filing of an Affidavit of Merit ("AOM"), (4) billing entries related to OPS 9's Rule 12(c) motion, and (5) billing entries related to a different file. *See id.* at 5-11. Faloni suggests a compromise award that consists of the total amount requested by the Salvo Firm, plus a nominal award of $5,000 to the Bedard Firm. *Id.* at 11-12. In Faloni's view,

> [a]warding fees/expenses in this fashion . . . is the most appropriate and balanced way to fairly compensate [OPS 9's] counsel for what should have occurred here, which is that one law firm "takes the lead" in the case while the other law firm only provides a modest amount of support.

*Id.* Faloni also contends that OPS 9 should receive no fees in conjunction with this motion because counsel did not provide evidence of their fees and expenses with their initial papers. *Id.*

### III. ANALYSIS

"The party seeking attorneys' fees has the burden of proving that the requested fees are reasonable." *Jackson Hewitt Inc. v. Nat'l Tax Network, LLC*, No. 10-5912, 2015 WL 5770089, at *4 (D.N.J. Sept. 29, 2015). "The starting point for determining any reasonable fee is to calculate a 'lodestar' amount; that is, the number of hours reasonably expended multiplied by a

4

reasonable hourly rate." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998). Once determined, the lodestar is presumed to be the reasonable fee. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The Court may then, in its discretion, adjust the lodestar to account for the degree of success achieved. *See I.K. v. Montclair Bd. of Educ.*, No. 16-9152, 2019 WL 5344550, at *3 (D.N.J. Aug. 28, 2019).

"Although courts have considerable discretion to award fees, courts cannot decrease fee awards 'based on factors not raised at all by the adverse party.'" *Goh v. Coco Asian Cuisine, Inc.*, No. 15-6310, 2019 WL 5328857, at *2 (D.N.J. Sept. 27, 2019) (quoting *J&J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003)), *report and recommendation adopted*, 2019 WL 5309441 (D.N.J. Oct. 18, 2019). Downward adjustments must be based on "direct and specific objections by opposing counsel." *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore LLC*, 937 F. Supp. 2d 537, 563-64 (D.N.J. 2013) (collecting cases), *aff'd sub nom. Red Roof Franchising LLC v. Patel*, 564 F. App'x 685 (3d Cir. 2014).

At the outset, the Court disagrees with the proposition advanced by Faloni that Plaintiffs' agreement to accept $70,000 in fees as part of the settlement of class action precludes OPS 9 from recovering more than that figure by way of the instant motion. The Court can only speculate as to whether Plaintiffs' counsel requested the entirety of their fees or a reduced figure to facilitate a quicker settlement. Furthermore, Faloni cites no law requiring parity between the fees expended by each litigant's respective counsel. That is likely so because there are infinite variables that would cause the fees generated to differentiate, *i.e.*, different hourly rates and increased time spent responding to class-wide written discovery requests.

The Court now turns to the calculation of the lodestar by reviewing the hourly rates requested and the time expended on this action.

**1. The Reasonable Hourly Rate**

Prevailing market rates in the legal community usually set the reasonable hourly rate. *See AT & T Corp. v. JMC Telecom, LLC*, No. 99-2578, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (explaining that the prevailing party satisfies this burden by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience."). Under the "forum rate rule," out-of-state attorneys obtain the hourly rate "prevailing in the forum in which the litigation is lodged." *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 493 (D.N.J. 1998) (internal citations and quotations omitted). The court must award fees at the requested hourly rate where, as here, the non-movant submits no contradictory evidence. *See Goh*, 2019 WL 5328857, at *3.

The Court concludes that Ms. Salvo and Mr. Bedard have submitted sufficient evidence to establish the reasonableness of the rates requested. Ms. Salvo requests an hourly rate of $300.00 and $350.00 for her legal work on this matter.[2] *See* Salvo Decl. ¶ 8; Salvo Decl., Ex. B, D.E. 128-2 at 42, 50, 60. Ms. Salvo attests that she has been practicing law for twenty-two years and that she has been doing FDCPA defense work for fifteen years. Salvo Decl. ¶ 8. As for the Bedard Firm, Mr. Bedard seeks an hourly rate of $325.00 and submits that he has been practicing FDCPA defense for twenty years. Bedard Decl. ¶ 3. The Bedard Firm also seeks an hourly rate of

---

[2] It is unclear to the Court why select tasks were billed at $350.00 whereas the majority of the tasks were billed at $300.00.

6

$265.00 to $285.00 for time spent on this matter by its associate, Michael K. Chapman, Esq.[3]  *See id.* ¶ 4; Bedard Decl., Ex. A, D.E. 128-3 at 35, 81.  Both firms submit that their hourly rates are below those recommended by the Community Legal Services ("CLS") fee structure for attorneys with comparable experience.  *See* Bedard Decl. ¶ 5; Salvo Decl. ¶ 9.

The Court finds that Ms. Salvo and Mr. Bedard have submitted sufficient evidence to establish the reasonableness of the rates requested.  *See Stadler v. Abrams*, 2018 WL 3617967, at *8 (D.N.J. July 30, 2018) (noting that "CLS's fee structure has been cited approvingly by the Third Circuit Task Force on Court Awarded Attorney's Fees").  Nothing in the record suggests otherwise, and Faloni has not argued otherwise.  *See Hari Hotels, LLC v. SNG Props. LLC*, No. 18-8018, 2020 WL 1243807, at *5 (D.N.J. Mar. 16, 2020) (adopting the proffered rates in the absence of a challenge by the non-movant).

**2. Time Reasonably Expended**

The Court must now determine whether the time expended was reasonable.  *See Blakely*, 2 F. Supp. 2d at 604.  A court may reject fees for any hours that are "excessive, redundant, or otherwise unnecessary."  *Id.*  The Court has carefully reviewed the invoices and now considers Faloni's objections to the tasks performed by OPS 9's counsel.

**a. Division of Labor among Counsel and Unnecessary Fees**

The Court first considers certain fees that are incident to the fact that local counsel and national counsel needed to coordinate their efforts to jointly defend OPS 9 in this action.  It is well recognized that "'the use in involved litigation of a team of attorneys who divide up the work

---

[3] Chapman's billing rate increased from $265.00 per hour to $275.00 per hour on or about March 1, 2015.  *See* Bedard Decl., Ex. A, D.E. 128-3 at 35.  Mr. Champman's billing rate increased from $275.00 per hour to $285.00 per hour on or before August 1, 2018.  *See id.* at 81.

7

is common today for both plaintiff and defense work,' and a reduction for duplication 'is warranted only if the attorneys are unreasonably doing the same work.'" *Slomovitz v. Enclave at Fairways Homeowners Ass'n, Inc.*, No. 18-16910, 2019 WL 5587290, at *5 (D.N.J. Oct. 30, 2019) (first quoting *Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983); then quoting *Rode*, 892 F.2d at 1187). The Court finds that counsel adequately divided the tasks among the two firms such that there was no meaningful duplication of work. This six-year-old case involved a Rule 12(c) motion and a motion for summary judgment, as well as multiple in-person appearances that included mediation and settlement conferences. As reflected in their billing entries, national counsel drafted the dispositive motions while local counsel conformed those filings to the Local Civil Rules and handled court appearances. Accordingly, this was not a case where one firm predominately handled the case and the other firm merely provided support. The Court thus finds nothing inherently unreasonable in the fact that the fees generated by each firm are close in number.

Throughout this action, national counsel and local counsel conferred about strategy, case updates, and scheduling via telephone and email. The Court finds that the two firms generally coordinated their invoices to avoid generating two billing entries for the transmission of a single communication. This Court's review of the billing entries—guided by the challenges lodged by Faloni—nonetheless revealed certain inconsistencies that require this Court to eliminate certain fees as redundant or otherwise unnecessary. The scrutinized tasks often fall into the category of administrative or clerical, such as sending emails that merely forwarded a document, reviewing attorney invoices, and calendaring upcoming deadlines. *See Halderman v. Pennhurst State Sch. & Hospital*, 49 F.3d 939, 942 (3d Cir. 1995) ("The fact that private lawyers may perform tasks

8

other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."); *Raab v. City of Ocean City*, NO. 11-6818, 2017 WL 2779753, at *5 (D.N.J. June 26, 2017) (discounting hours devoted to, *inter alia*, sending payments); *Roccisano v. Twp. of Franklin*, No. 11-6558, 2015 WL 3649149, at *8-9 (D.N.J. June 11, 2015) (stating that "tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients").

### i. Bedard Firm

The Court has identified 6.2 hours billed by the Bedard Firm that were unnecessary correspondences among local and national counsel. These entries include, among others, correspondences to local counsel to confirm receipt of OPS 9's pleadings and discovery responses, *see, e.g.*, D.E. 128-3 at 9, 35 (Mar. 28, 2014; Apr. 11, 2014; Mar. 23, 2015); telephone calls with local counsel regarding the status of proceedings, *see, e.g.*, *id.* at 29, 34, 47, 57, 81 (Dec. 18, 2014; Dec. 19, 2014; Mar. 4, 2015; Aug. 3, 2015; Jan. 6, 2016, Aug. 7, 2018); and telephone conferences where both national counsel and local counsel appeared, *see, e.g.*, *id.* at 43, 48 (June 26, 2015; Aug. 21, 2015). The Court will deduct $1,702.00 for these entries.

The Court next concludes that 2.4 hours billed for the Bedard Firm's review of the Salvo Firm's invoices and retainer agreement were unnecessary. *See, e.g.*, *id.* at 7, 12, 15, 29, 45, 48 (Mar. 18, 2014; Mar. 19, 2014; Mar. 20, 2014; Apr. 8, 2014; May 21, 2014; Dec. 5, 2014; July 10, 2015; Aug. 26, 2015; Aug. 27, 2015). The Court will strike $649.00 from the fee award for these entries. The Court will also strike $1230.50 for 4.5 hours associated with various tasks that the Court deems unnecessary. These entries include, among others, the attendance of two attorneys

9

from the Bedard Firm in addition to Ms. Salvo at the Rule 16 conference, *see, e.g.*, *id.* at 14 (May 21, 2014); time spent inputting calendar entries, scheduling depositions, and reviewing deadlines, *see, e.g.*, *id.* at 17, 41, 55, 58 (June 2, 2014; June 5, 2015; Dec. 3, 2015; Feb. 18, 2016); and billing entries related to different file, *see id.* at 42, 47 (June 12, 2015; Aug. 11, 2015).

Finally, the Court will deduct $3,492.50 from the fee award in response to OPS 9's concession that it was unnecessary for two attorneys to defend the same deposition. *See* OPS 9's Reply Br. at 8; D.E. 128-3 at 43, 45 (June 22, 2015; July 1, 2015). In sum, the Court will strike $7,074.00 from the award for unnecessary fees generated by the Bedard Firm in defending this action.

### ii. Salvo Firm

The Court has identified 3.7 hours billed by Ms. Salvo and 0.5 hours billed by the Salvo Firm's paralegal that were unnecessary. These entries include, among others, telephone calls and emails regarding the status of the matter, *see, e.g.*, D.E. 128-2 at 10, 79, 89 (May 20, 2014; Aug. 7, 2018; Jan. 8, 2019); billing entries pertaining to invoices, s*ee id.* at 68, 85 (Mar. 13, 2018; Nov. 30, 2018); and miscellaneous tasks such as calendaring, s*ee id.* at 15, 50 (Aug. 11, 2014; Oct. 19, 2016). Accordingly, the Court will strike $1,407.50 from the fee award for unnecessary fees generated by the Salvo Firm in defending this action.

### b. Affidavit of Merit

Faloni next asserts that no fees should be awarded in conjunction with defense counsels' preparation of an AOM for the Third-Party Complaint. *See* Faloni's Opp. Br. at 9. Faloni submits that there was no legal malpractice alleged in this action and that no expert report was ultimately served. *Id.* OPS 9 submits that the fees are proper because it alleged in its Third-

Party Complaint that "Faloni had failed to properly perform legal tasks for which it had been engaged; akin to a claim for legal malpractice which the requires the filing of an AOM." OPS Reply Br. at 5. OPS 9 also emphasizes that Faloni stipulated to an extension of time for OPS 9 to file an AOM in this action. *See id.*; Stip., July 14, 2014, D.E. 14.

The AOM Act prescribes that

> [i]n any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession . . . , the *plaintiff* shall, within 60 days following the date of filing of the answer to the complaint by the defendant, *provide each defendant* with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care . . . exercised . . . in the treatment, practice or work . . . fell outside acceptable professional . . . standards or treatment practices.

N.J. Stat. Ann. § 2A:53A-27 (emphases added). The failure to file an AOM is deemed a failure to state a cause of action. N.J. Stat. Ann. § 2A:53A-29; *A.T. v. Cohen*, 175 A.3d 932, 937 (N.J. 2017). The AOM Act applies to licensed attorneys. *See* N.J. Stat. Ann. § 2A:53A-26.

It is an open question whether an AOM was required to be served in this case. *See Burt v. W. Jersey Health Sys.*, 771 A.2d 683, 688 n.2 (N.J. Sup. Ct. App. Div. 2001). The statute's plain language does not address impleader, and speaks only of the plaintiff's obligation to serve each defendant. N.J. Stat. Ann. § 2A:53A-27. The Superior Court of New Jersey, Appellate Division has nonetheless held that a defendant's counterclaim for professional malpractice is subject to the AOM Act on the basis that the counterclaimant is "in effect . . . the plaintiff on the malpractice counterclaim." *Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth.*, 781 A.2d 1116, 1118 (N.J. Sup. Ct. App. Div. 2001) (alterations in original) (quoting *Cornblatt v. Barow*, 696 A.2d 65, 67 (N.J. Sup. Ct. App. Div. 1997), *rev'd on other grounds*, 708 A.2d 401 (N.J. 1998)). The Court predicts that the New Jersey Supreme Court

11

would likewise treat a third-party plaintiff in the same manner as the Appellate Division has with respect to counterclaimants.  *See Alpizar-Fallas v. Favero*, 908 F.3d 910, 914-15 (3d Cir. 2018).

Here, the Third-Party Complaint included a negligence claim against Faloni.  As revealed by their respective billing entries, counsel expended several hours researching the applicability of the AOM Act, conferring with its chosen affiant, and drafting the affidavit.  *See, e.g.*, D.E. 128-2 at 15 (Aug. 4, 2014; Aug. 5, 2014); D.E. 128-3 at 20-21 (Aug. 1, 2014; Aug. 8, 2014).  OPS 9 ultimately filed the AOM on August 8, 2014.  *See* Affidavit of Merit, Aug. 8, 2014, D.E. 17.  Because noncompliance with the AOM Act requires dismissal with prejudice, this Court finds the approximately five hours expended on the AOM to be reasonable.

### c. Rule 12(c) Motion

Faloni next requests this Court reduce the fees associated with the motion for judgment on the pleadings based on OPS 9's failure to obtain a complete dismissal of the action.  *See* Faloni's Opp. Br. at 10.  OPS 9 counters that its fees should not be reduced and that its motion was successful "in that it greatly narrowed the issues that were to be considered in this case."  OPS 9's Reply Br. at 6.  The Court agrees with OPS 9 and will not reduce the fee award based on the outcome of this motion.

OPS 9 asserted in its motion that its alleged failure to comply with state law is not actionable under the FDCPA, and that its conduct at issue does not otherwise violate the FDCPA.  *See generally* Mem. of Law in Supp. of Defs.' Mot. to Dismiss, Mar. 20, 2015, D.E. 26-1.  In a thorough analysis of Plaintiff's claims and OPS 9's arguments, the District Court agreed with OPS 9 in part.  *See* Op. at 4-12, Oct. 21, 2015, D.E. 41.  Specifically, the District Court held that violation of state law alone does not violate the FDCPA; that certain alleged misrepresentations

were not material within the meaning of 15 U.S.C. § 1692e; and that certain claims brought under 15 U.S.C. § 1692f were duplicative of the claims under 15 U.S.C. § 1692e.  *See* Op. at 4-12, Oct. 21, 2015, D.E. 41.  In sum, the District Court permitted only two of Plaintiff's FDCPA claims to go forward.  Based on the foregoing, the Court declines to adjust the requested fees because based on the success of that motion.

### d. Fees & Costs Expended in Conjunction with this Motion

Finally, Faloni contends that OPS 9 should not be awarded any fees or expenses in conjunction with the time spent on the instant motion because the Salvo Firm and Bedard Firm did not include records of their fees and expenses with OPS 9's moving papers.  *See* Faloni's Opp. Br. at 12.  Faloni thus submits that it had no opportunity to respond regarding the reasonableness of those fees.  *Id.*  OPS 9 responds that it is well established that a litigant entitled to a fee award is also entitled to fees expended in the litigating the application.  *See* OPS's Reply Br. at 8.  OPS further submits that Faloni should be given the opportunity to file a sur-reply to challenge any aspect of those fees.  *Id.*  Faloni did not request leave to do so.

"In a proceeding to determine an award of attorneys' fees, an attorney may include in a supporting affidavit fees for preparing the petition seeking fees and litigation costs."  *Hari Hotels, LLC*, 2020 WL 1243807, at *5.  The Court has reviewed the billing entries with an eye to the nature of objections raised by Faloni in regard to the fees generated in the underlying defense. With respect to the substance of the billing entries, the Court finds nothing excessive or unnecessary with respect to the Salvo Firm's work on this motion and awards OPS 9 the entirety of the fees spent on this task.  *See id.* at *2, *5 (finding that $6,555.00 expended on fee petition

13

and $9,105.50 expended on reply to the fee petition were not unreasonable in case seeking $74,384.08 in total fees).

### 3. Lodestar Calculation & Adjustments

The following chart sets forth the lodestar calculation and adjustments based on the Court's review of the invoices submitted in support of OPS 9's Motion:

#### a. Bedard Firm

| **Timekeeper** | **Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Michael K. Chapman, Esq. | 173 | $265-285 | $47,108.00 |
| John H. Bedard, Jr., Esq. | 2.7 | $325 | $877.50 |
| Bedard Firm Costs[4] | | | $1,822.74 |
| Reduction | | | ($7,074.00) |
| **Bedard Firm Fee Award** | | | **$42,734.24** |

#### b. Salvo Firm

| **Timekeeper** | **Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Cindy D. Salvo, Esq. | 141.8 | $300-$350 | $42,870.00[5] |

---

[4] The Court concludes the fees requested by OPS 9 are reasonably related to the litigation in this matter and were properly documented. They are the type of services for which costs can generally be obtained.

[5] As set forth in Ms. Salvo's Declaration, OPS 9 seeks $45,590.00 in fees and $295.69 in costs for the work performed by the Salvo Firm. *See* Salvo Decl. ¶ 6. The Court's calculation of the lodestar resulted in a discrepancy between the amount requested in Ms. Salvo's Declaration and the total amount of fees generated in the invoices submitted to the Court. After a careful review, the Court has determined that OPS 9 failed to include Invoice No. 4054 in its fee application, which totaled $ 1,494.50 according to the "Detailed Statement of Account" section of the following month's invoice. *See* Reply Decl. of Cindy D. Salvo, Esq. in Further Supp. of Third-Party Pls.' Mot. for Attorneys' Fees, Ex. C, Dec. 9, 2019, D.E. 134-1 at 10. This Court declines

| Salvo Firm Paralegal | 9.9 | $125 | $1,237.50 |
| Salvo Firm Costs | | | $283.69 |
| Reduction | | | ($1,407.50) |
| **Salvo Firm Fee Award** | | | **$42,983.69** |

c. Fee Application

| <u>Timekeeper</u> | <u>Hours</u> | <u>Hourly Rate</u> | <u>Total</u> |
|---|---|---|---|
| Cindy D. Salvo, Esq. | 17.8 | $300.00 | $8040.00 |
| Salvo Firm Paralegal | 1.1 | $125.00 | $137.50 |
| Salvo Firm Costs | | | 0 |
| **Salvo Firm Fee Award** | | | **$8,177.50**[6] |

IV. **CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part OPS 9's Motion for Attorneys' Fees, and will award $93,895.43. An appropriate Order will follow.

<u>**Michael A. Hammer**</u>
**UNITED STATES MAGISTRATE JUDGE**

Date: April 20, 2020

---

to award OPS 9 that figure without having the opportunity to review the fees and costs expended. *See Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) ("[W]here the documentation of hours is inadequate, the district court may reduce the award accordingly." (quoting *Hensley*, 461 U.S. at 433)).

[6] When citing the total amount of the fees expended on the fee application, OPS 9 incorrectly included the balance brought forward from the prior invoice in its calculation. *Compare* OPS Reply Br. at 11 *with* Reply Decl. of Cindy D. Salvo, Esq. in Further Supp. of Third-Party Pls.' Mot. for Attorneys' Fees, Ex. C, D.E. 134-1 at 10.

15